Good morning, Your Honors. May it please the Court, my name is David Koch. On behalf of the Petitioners, Francisco Ancaro and Ivan Alva Gonzalez. As a preliminary matter, before we get to the merits of this appeal, an item has come to my attention and I've discussed with the government, which may actually move this appeal. And that's the settlement agreement that has been entered in the Barahona Gomez Ashcroft case in early 2003. In that settlement agreement, it provides for a procedure to file a motion for a new suspension of deportation for class members that appear to include the Petitioners here. That is, Petitioners who had a motion or a hearing for suspension of deportation between February 13, 1997, and April 1, 1997, scheduled within the Ninth Circuit. And at the request of someone other than the Petitioner, that hearing was continued to a time beyond April 1, 1997, resulting in the application of the Stop Time Rule. That's exactly what has happened here. And my suggestion would be that the Petitioners... I apologize for not having additional information. The decision, which is at 243 F. Sub. 2nd. 1029, was entered in the Northern District of California, December 18, 2002, was finalized in the Court of Appeals in January 2003, and published in March in the Federal Register, or at least the notice of the settlement, March 2003, and gives class members 18 months to file a motion for a new suspension of deportation with the BIR. Why are we hearing about this now for the first time this morning? It was not — it didn't come to our attention. In briefing the case and the appeal that was filed by the Petitioner in the first instance and then supplemental briefs on his behalf, the issues were not — were not apparent at the time. So what do you want us to do today? My thought is that we file a motion for — motion to reopen with the BIA. We file a motion to stay this appeal. Do you want to dismiss the petition for review? Well, I want to make sure — again, I want to make sure that we fall within this class and we can file a motion with the BIA. I think that we're fine. I think timing-wise, I think class status-wise, that we fall within those provisions. But I'm not willing to dismiss today on my — on my reading. I learned of this. I learned of it this morning. As a footnote to one of the cases that we cited in our brief, found the case and discussed it with one of my colleagues and copied the case this morning. I discussed it with the government this morning. Counsel indicated that she wasn't sure whether it did apply, had some familiarity with this before, but wasn't certain whether it did apply. So if the Court would like, we can file supplemental briefings. But I think the proper course would be to file a motion to reopen with the BIA, file a motion to stay, I would think, here, the appeal pending the resolution of the BIA, if that motion is actually — Well, you have an appeal pending now. Right. Which has been briefed and is ready for hearing. I'm happy to argue the merits of that appeal. Actually, this settlement agreement gives some indication of exactly what we're appealing. Can I finish? Oh, sorry. Do you want to talk? No, I'm fine. I'm sorry. Go ahead, Your Honor. We have a case that's here. We are ready to hear the case. If you choose not to argue it, we can order it submitted as it is. It's your choice. And then you can do whatever you want with this new information. You can petition the Board. You can start a new case. I mean, I don't like — can't give you legal advice. But since it's not — it's at most a hypothetical possibility, it doesn't seem to me it affects at all the — what we are here to do this morning. If you — would you like to simply submit the case without arguing it? That's fine. Why don't — it's in my suggestion that we argue the merits of the appeal this morning after reviewing this settlement agreement. You made a suggestion to us? You know, you have the burden on behalf of your client to take some action. The action might, if it's successful, moot this appeal. On the other hand, this appeal may be decided before you take that action. If you want us to state proceedings in light of something you have done or something that you propose to do based on an investigation of facts and law, then you can file a motion asking us to do that, and then we can rule out motion. But all I've heard you now spend five minutes talking about is some hypothetical set of facts that you can't even tell me has any relevance to your client. You think it might? It could? So we — do you want to proceed today? I would like to proceed today, yes, Your Honor. Okay. Now, if you've got something else at some later point in time, you can — Okay. You know where the close office is. All right. Thank you. The key issue, then, today is, should the Aldo Gonzales family have had a hearing on the merits of their suspension of deportation application on March 27th, 1997, when it was originally scheduled, and if not, or if that hearing did not go forward, did that delay prejudice the family by applying the application? Was this issue raised any time before your brief in this Court? Was it ever raised before the BIA? I mean, we don't work by ambush here. I understand. The issue, pro se, notice of appeal was filed. Was it raised? You can give me an explanation all you want. It was raised, and you will tell me why it was raised and point to where it is. It was not raised, and here is the excuse why it wasn't. So was it raised before the BIA? Was it not raised? Yes or no? Yes. It was not — Point to me where it was raised. I have the motion to reconsider, which starts at 10, page 10 of the excerpt of record, which I believe is the only place it could have been raised, but maybe you have other places that I'm not aware of. Well, there are actually two briefs that were submitted to the BIA. You go ahead. You tell me. I've got the excerpt of record. First on excerpt of record, page 14. Okay. First sentence of that provision states, The immigration judge took into consideration and against the male respondent that the wife and child did not qualify for suspension of deportation in light of Section 309C5 of the INA. Continue to discuss re-papering requirements. Certainly the issue raised that the immigration judge made an initial decision that the applications of wife and child would be pre-permitted without any factual findings or any assessment of — What does that have to do with the question of whether or not postponing the hearing and failing to object to postponing of the hearing is some sort of violation of due process? Where is that issue contained? That the ineffective assistance of counsel with respect to — Either the ineffective assistance or you have a sort of separate claim that the I.J. committed some sort of due process violation by — I don't see either of them. I don't see postponement of the hearing being discussed at all anywhere in the BIA. So that's why I asked the question. Was this issue raised, the postponement of the hearing cluster of issues? Either the ineffective — No, that was not directly — That was not — Directly is a weasel word. Okay. That was not raised with the BIA. Okay. So we are now in the land of considering things. We're no longer in the land of reviewing for abuse of discretion decisions actually made by the agency. We're now in the land of reviewing things that the agency never had a chance to consider because it was never raised below. And what authority is there for that? Well, I wouldn't say they did not have a chance to consider this matter. The other thing I would say is that the BIA did not have a chance to consider the case of the immigration judge. The BIA did not consider actually, in their opinion, or the order that they issued at pages 2 and 3 of the record — I'm sorry. What page was that? I'm sorry. What page was that? Pages 2 and 3. Okay. Okay. They reviewed the decision of the immigration judge. The immigration judge stated that Petitioner, the wife and child, were pre-termitted on the basis of 309c5 without any analysis of the factors that might have resulted in hardship to them and considered the merits of their claims for suspension of deportation, found that the immigration judge's decision is thorough and correct. In that sense, the immigration judge on the record in the first hearing on March 27, 1997, stated — Counsel, do you realize they were never able to prove that they had lived in the States for seven years? They were not able to prove that? They were given an opportunity and never were able to prove that? I don't think that's right. The Petitioner, the lead Petitioner, Francisco, presented evidence that he had been in the States for seven years. Wife and child were not — You're talking about continuous, continuous living in the United States for seven years. Well, I don't think that that, the continuous issue was a factor in making the decision that the wife and child were not in the country for seven years. Instead, the immigration judge decided that when they came in in 1990, they had their orders to show cause issue. He came in 1989. Right. Is that correct? Yes. And then his wife and child came in March of 1990. That's correct. Okay. And then there were children that were born in Mexico at that time also. There were children that were born in the United States. Yeah, one child was born in the United States. The other two children were born in Mexico. But he could not prove that he'd been here for seven years. There was no proof of that. That — I'm talking about continuous living here. Well, no determination, however, was made. There are three individuals here. One of them came in in 1989, a lead Petitioner. The other two came in in March of 1990. The judge did not even make an assessment of whether they had been here continuously because he decided that, based upon the stop-time rule, they could not have possibly been here for seven years since the order to show cause was served on them before the seven-year time period would have elapsed. And so that decision was not — there were no factual findings based upon the wife and child at that hearing. Instead, it was just simply a question of a statute for reconstruction of when the OSC was served. And then they had ineffectiveness of counsel. They didn't follow the Lizoda case, which has been announced by this Court, and asked people to follow it. They were going to file a petition, and they were advised if they didn't file a petition on time that that would — they would not look at it or have anything to do with it. They didn't do that either. Then they had a notary file some papers, and I think he filed them late. If I'm saying it wrong, correct me. You are correct. The issue of the late-filed brief, however, as the government has briefed, is essentially moot here in the sense that the BIA said — Weren't they admonished that they had to file it on time or the Court wouldn't look at it? Although this Court, the Court did look at it. That's correct. And initially they did grant summary dismissal based upon the late-filed brief. They did subsequently, though, say when a motion to reopen or reconsider was filed, construed as a motion to reopen, that the late-filed brief, even if that were considered and the BIA considered the late-filed brief, that on the merits, they did not believe that the — did not believe that the claim was valid. So the late-filed brief issue is sort of a red herring. It didn't dispose of the case. The BIA did consider and issued a ruling addressing the merits of the case. Well, here's the problem I'm having, and I'm not convinced of this issue. And I am not suggesting that the 5-day — it wasn't a 5-day delay. It was a delay of more than 5 days. But the crucial time was 5 days, that it was a good lawyerly decision to postpone. But there was no compliance with Lozada. And part of what Lozada is about is to give the lawyer a chance to explain. It's sort of the counterpart to Strickland, where you can bring a lawyer in and the lawyer can say, well, this was a strategic decision. I made the decision for the following reasons. So we don't have any explanation from the lawyer as to why he did that. Maybe he was just being stupid, but maybe there were good reasons that we are not aware of. And there is no ruling from the board on this. The board — I mean, I know you don't want to admit this, but if you were sort of looking at it objectively, as I hope we are, you know, we really would not be able to say, look, the board goofed. It had this argument presented to it, and it just made the wrong decision. I think the more likely — the far more likely way to view this record is the board just didn't have a chance to rule on this. They did not have this argument presented. And maybe they would have done something else if they had. That's possible. That's the — I understand. And that's certainly possible that they could have if they had been directly pointed to this issue ruled otherwise. However, this is certainly an issue of great importance in the immigration bar at the time. There was a flurry of decisions soon after this where a hearing either went forward a few days before the effective date of ARERA, April 1, 1987, or afterwards, and they were assessing whether the application stop time rule was effective to apply to hearings before the ARERA effective date. The BIA had, again, reviewed the immigration judge's decision, which included the decision by the immigration judge to continue the case to hopefully clarify the record based upon all sorts of pending legislation and different things that really had nothing to do with whether the timeframe or the window of an OSC being filed had anything to do with the stop time rule. Instead, just it only dealt with orders to show cause and notices to appear and which one actually fell within the rule. And so there was no reason to delay that at that time. The BIA could have, certainly could have. I don't think there's any doubt this was a bad decision. It was a, I mean, bad, not necessarily incompetent, but it was a decision that prejudiced your client, that had bad consequences for your client. There's no doubt about that. But even in the criminal context, lawyers often make bad decisions, often make decisions that cause the client many years of freedom and sometimes their lives. And we look at them and the Supreme Court looks at them and says, well, you know, it's, lawyering is not an exact science. It's close enough for, I mean, it's arguable, it's debatable. It's a ‑‑ Well, Judge, there certainly are tactical decisions that can be made, putting on a witness or not, different things like that. However, here, this is not really a tactical decision. The judge says, I'm going to delay these proceedings based upon a serrera, which had come out three months before. It was obvious that if the hearing had gone for on that date, the stop time rule would not have applied, the 7‑year period would have been applicable, and the judge would have necessarily had to look at these requirements. It could not have been, there could not have been any benefit to the Petitioners to delay the proceedings beyond the April 1st, 1997 date. You've got about three minutes for a bottle. Let me, and we'll stop the clock there. While you're waiting, you might think about whether you want us to, stop the clock, whether you want us to construe your statement at the beginning as an oral motion to defer submission of this case for two or three weeks, while you consider the implications of what you found this morning. You can tell us that on your bottle. Okay, thank you. We'll hear from the government. Good morning. Please, the Court. My name is Cindy Farrier, and I'll be representing the government in this case. As was earlier discussed, opposing counsel did approach me about the possibility that these Petitioners may qualify under the Barahona class settlement. I tried to contact my clients, but I was unable to get a hold of them and get a firm answer as to whether they were qualified. So the government at this point would have no position or would not agree to an abeyance, only because as far as I know, the appropriate procedure for applying for that sort of class status would be to file a motion to reopen with the Board. And at that point, if it were denied, then a petition for review could be filed, and then it could be heard. What would be the consequence if we go forward and let's say we were to deny the petition here? I'm not saying we would, but I'm just saying let's say that would be the adverse consequence for the Petitioners. What would be the consequence? What would be the next thing that would happen? Would they be whisked off to Mexico, or could they be subject to being sort of picked up and sent back? Certainly, once the mandate has issued from this Court, then yes, at that point, then the DHS is authorized to go ahead and pick them up and deport them. So in a sense, it would be more prudent for us to withhold action at some point in the process, again, if we were to deny the petition, or maybe even deny deferred submission, to allow this other process to take its course, at least enough time for counsel to, on both sides, to determine whether or not this settlement applies. Yes. If, in fact, it appears that they qualify for this settlement, this again would only be for Mrs. Gonzales and for the son, then the government would likely agree to an abeyance at that point. If, in fact, we do, you know, if they do seem to permit it. But why does it only apply to the Mrs. Gonzales? Because the stop-time rule was not applied to Mr. Gonzales. He, in fact, had a hearing on his part. Well, he may also be entitled to separate relief because the stop-time rule was not applied to him, but he would be covered by the class. The class would give him, if he's covered by the class, it would provide him relief and the entire family, independent of what happened. Actually, no. The procedural posture of the case is that Mr. Gonzales, the stop-time rule was not applied to him. The immigration judge went ahead and had a hearing on the merits on June 8th regarding his suspension application and heard the extreme hardship factors. He pretermitted Mrs. Gonzales and the son's application, saying, no, you haven't established the seven years of continuous physical presence, so I'm not even going to consider the equities, the hardship in your case. So, if the petitioners, if the Barahona-Gomez class was available to the petitioners, it would only be with regard to Mrs. Gonzales and to the son. Now, that you may determine, I would think that we would want to hold the case in advance, the government would want to hold the case in advance with you all if they qualify and let the board rule on whether it may, in fact, affect Mr. Gonzales' petition as well. They've already made a motion to reopen once, right? Yes. Can they go back and make another motion to reopen? Well, that's also what I would have to check with my client on. Under Barahona-Gomez, they are still within the time frame for filing a motion to reopen based upon that. However, I'm not certain that, I'm not certain if the numeric limitations on motions would apply to them. You could join them, right, if you wanted to, to get them out of the numeric limitation? I would check with the client to see. I mean, procedurally, that would, if you were inclined to do that, that's the way they would avoid the one-shot rule? Yeah, I think that's right. But, again, I would have to check with both clients to know. I guess I'm, well, maybe this can be clarified in the papers. The missus and the son would get relief under the class. They don't have to go back to the BIA. They would actually. Assuming they're covered. Assuming if they fall within the class, what would happen, I believe, and, again, I haven't read the settlement agreement recently, so I'm not certain, it would be remanded to the immigration judge for a hearing on the discretionary determination, whether, in fact, they showed extreme hardship. And the only thing that would be changed would be that the immigration judge would not be able, or he would not say, you don't qualify because you don't have seven years. He would still have to go on. What he would have to do then is go on and consider the rest of the case. If he considered all three, he wouldn't just consider the. He would just consider the two, because he already considered the three. I mean, again, theoretically. But he considered the one, an assumption that the other two were being deported, and he can't very well say, you know, I'm going to stick with that determination as to him. Assuming the missus and the son are, and I guess other kids are being sent back, but, I'm sorry, the other kids are citizens, so I guess he could stay with the father. So on this assumption, and we're going to hold him in place, and now we're going to make a separate determination as to the missus. Well, it would depend upon the way that the petitioners formed their motion to reopen, or their motion with the board, because technically the IJ did rule on the decision with regard to the husband. And as part of my argument today, I was going to make the point that, in fact, the immigration judge did consider a number of different factors. But it heavily weighed in his assessment was the fact that he would get to stay, she and the son would leave, and that he said, I'm not going to let my family go, and stayed behind. So... Well, I didn't see... That was sort of part of the... In his decision, he actually mentions the fact that the petitioners, that his family would go with him. The immigration judge said the petitioner's family would accompany him. But I don't see, or it's not my interpretation reading the record, that the immigration judge actually did heavily rely upon the fact that his wife and child would not be eligible for suspension. He wouldn't be human if he didn't. Well, the other... We wouldn't defer much to his determination if he didn't. I mean, this is a human, I mean, this is the life of a family. And it seems to me if he doesn't take into account whether the family will be torn apart, across an international boundary, or whether they'll stay together, if he didn't... I mean, I'm giving him the benefit of the doubt that that's what he looked at, because that's what any human being would look at. If you want to sort of argue, no, he didn't, then I don't know. That casts his decision in a far worse light, as far as I'm concerned. Well, it's not certain, I guess, the point I was trying to make is simply that it's not certain that he would rule any differently, even if the petitioners had presented, had been able to have, or I guess they were not eligible. That's why Ventura tells us we don't take guesses about these things, because you have a guess and I have a guess. And Judge Sullivan and Judge Meenah, I'm sure, have their own guesses. But we were told by the Supreme Court that our guesses don't amount to much. What we need to do is make sure that the agency makes its decision. Right. And if it turns out it made its decision on a record that's false or that's different, you know, that's bad, then we, our duty is not to guess what it would have done, but to send it back for it to do it again, considering the proper factors. Well, I would agree, certainly, that Meenah and under Ventura would be held to account. Now, you agree, do you not, that it was a bad decision on the part of the lawyer to delay of the hearing? If he had just, if he had just objected, things would have been, could have been quite different, and it would have been a very different case presented to the I.J. I would not agree that it was necessarily a tactical error at the time. In hindsight, it certainly appears that it has been. It is correct that the stop timer was applied to them. I didn't say tactical error. It was a bad decision. But it's not certain. It's also quite speculative what would have happened even if he had objected. First of all, the immigration. We can talk about that in a minute, but I think let's talk about right now whether it was a bad decision, whether it was competent for him to do that. Well. I'm having a little trouble figuring out a scenario under which one would view this as a competent decision. You know, usually the way it is is the lawyer comes in, this happens mostly in criminal cases, and say, you know, I decided not to cross-examine the mom because, you know, you cross-examine the mom before the jury. You know, it creates sympathy. And, you know, so I made this decision. I decided not to call an alibi witness because I figured, you know, the sister, the jury is just going to, you know, I'm going to lose face before the jury. You know, there were advantages and disadvantages, and I exercised my professional judgment to go with this choice rather than that choice. In this situation, I can't imagine what conceivable benefit there could have been to petitioners by counsel agreeing to continue the hearing. And there clearly were indications, including a Ninth Circuit opinion, that there were grave and irrevocable risks by doing so. According to a board decision which had been issued in February, on February 20th, 1997, they determined that, in fact, the stop time order would apply in conflict with the Ninth Circuit's decision, but they did say that it would apply to orders to show cause as well. Well, that's fine. And all that meant is, if that decision was right, it said there would be no damage from allowing continuance. But it doesn't show what benefit there could have been. Usually what you say is, look, we'll take a risk today. You know, Ninth Circuit has said one thing, and, you know, I realize that that's a risk. But I've got this other thing over here that I get a benefit from agreeing to the continuance. What is the benefit? Well, I guess the benefit, I'm only suggesting it might be that the immigration judge would deny their application saying, I'm going with the board ruling, and I'm going to find that the stop time rule does apply to their case. You know, I had the same question Judge Kaczynski had. And what I wondered is, if I understand what happened, the I.J. comes out and says, I want to continue the case. There's new developments. And I need to look into it. Couldn't counsel have reasonably thought, you know, the judge is hell-bent on continuing the case. I can object and lose, or I can be gracious and go along with the judge's stated desire and hope that will work to my client's benefit when we come back. I mean, that wouldn't be from outer space, would it? I don't believe it would be. I think that that may have been. He could have objected. I mean, he could have objected until the cows come home. If the judge is going to continue, he's going to continue it. Right. And you risk the chance of antagonizing the judge. I mean, that is actually what had come to my mind when. But preserving, preserving a statutory right that you have, that's highlighted in an opinion of the court.  Well, I think that that, again, I'm not certain. And that is where the affidavit. Is there anything else? Is there any substantive benefit that he could have gotten from the decision? Well, the only other one would be that the matter of NJB at the time said something different. However, the IJ did acknowledge that it appeared as though the attorney general was going to vacate that decision and take it under certification. But if one read the Ninth Circuit opinion and it turned out to be right, as it did in fact turn out to be right. Right. You would realize you're a lawyer and you were competent. You were sitting there looking at it. You would realize that by letting that five days pass, you would go through a door through which you can't come back. You would be giving up statutory rights for your client and his family that cannot be gotten back. You would have realized that. Right. And is it your argument that currying favor with the IJ is enough of a setting benefit that that makes a decisionally incompetent? Is that what you're arguing? Well, I don't think it makes it egregious enough to qualify it as giving up a claim that you're entitled to by statute. At that point, the law was fairly uncertain in immigration. Ninth Circuit decision on point? The Ninth Circuit decision, yes, had been issued, but it was still unclear as to the application as to that. Now, it's true that these petitioners would have benefited under that decision at the time, but there was the matter of NJB. There was the Attorney General's certification to herself. There was the NACARA provisions amendments, which came into effect later. And then there's the Circuit. This Circuit didn't actually clarify the way that the stop time rule would apply until 2001 in RAM and then Oterola and Guadalupe Cruz in three separate cases. So it wasn't specified, even within this Court, as to how to apply the transitional rules and stop time rules. Your position is that if you were a lawyer looking at that decision, you were standing at the hearing and you were fully informed of everything that was there, it was competent to say, I'll go ahead and go through what could very well be, what the Ninth Circuit tells me is, a statutory deadline that will cost my clients the chance to have seven years continuous residence. At least two of my clients. I just want to make sure I understand. Well, I am saying that it is not clear to me what was going through that counsel's mind at that point. I'm not asking you to read minds. What I'm saying is you are the lawyer. You're standing there. You have just read all the things I've told you. I am not that attorney. I'm sorry? I am not that attorney. Myself, would I? Well, I'm asking you. I'm making you the attorney. I'm saying you are there at the hearing. You've read the decision. You've read all the things you've said. Other than incurring favor with a judge, you know, sort of trying to sort of please the judge, is there any benefit from giving up this, what looks like is a statutory right that can be forfeited by letting five days pass? Would any? Would you do that? I would probably not do that. However, now. I'm worried about good money. You wouldn't. Well, probably not. Very likely what happened here is the lawyer didn't read the Ninth Circuit opinion, was not familiar with it. I don't know that that's true. That decision was quite well known within the immigration courts. I'm not sure which is worse. In that case, if it was so well known and he didn't know about it, that's incompetent. If he did know about it and he let it go. Suppose the judge said, I'm going to continue it, and the lawyer stood up and said, over my dead body, I object. I object strenuously. It's continued anyway. Then what happens? It's continued anyway. Then they still lose out. I mean, they would clearly lose out because, well, if it's heard after the April 1st hearing. I mean, the judge has discretion, does he not, to continue the case? Certainly, the immigration judge would have that discretion. Even if the immigration judge had sustained. But it could have been an abuse of discretion if the objection is raised, no, judge, we're ready to go. We insist on having a hearing today because my clients have statutory rights. And if you continue the hearing, you will be costing my clients their statutory rights. If that were the case we're reviewing today, we'd be looking at a very different case. It would be a very different case. However, that's not the case here. And, again, the ALA. I don't quite get it when lawyers tell me that. That's what hypothetical questions is about. Just so I'm going to ask you a hypothetical question. You gave an answer. And now I followed up on that question. Okay. Telling me, oh, this is not our case doesn't get us anywhere. Well, I guess I'm just concerned. I mean, it was not unfettered discretion to deny the continuance. We don't even know that the I.J. would have denied it because he clearly was acting by consensus. He had an off-the-record conference. We don't know what happened. And then he sought, he sought, he tried to get counsel's agreement. There's no indication he would have gone forward without an agreement. There was no motion from the government. The government didn't say, look, we can't go forward today. You know, we've got a harsh point. Nothing like that. But even if the immigration judge had, they had objected, he had sustained their objection, he still may not have ruled in their favor, and he still may not have decided the case on that day. And then likely it would have been held over for until after April 1st, 1997, since there were only five days left prior to that happening. So I just wanted to make the point that it's quite speculative. But if you had been petitioned as counsel, you would have said, judge, I want a decision today because, look, the Ninth Circuit says today my clients have rights and they expire. And I request that the Court make a ruling because in light of the statutory deadline, if need be, I'm going to go to the Ninth Circuit in the next four days and get them and Dana's going. You could have done that, I'm pretty sure. I can't say. But I would like to point out. I have every confidence. I again would like to point out, as the Court recognized earlier, that this claim is not even properly before this Court because it wasn't raised before the Board. And that the Board could have. That's a much better argument. And the Board could have competently addressed this, and the Court has recognized that in several decisions whether the immigration judge's decision to continue was proper or not is something within the competence of the Court. If you wanted to defer submission on the case so that you can check with the client and give counsel an opportunity to do whatever he wants to do, how much time do you think would be necessary? I would ask probably for 60 days just to allow me. I'm sorry, I didn't hear you. 60 days just to confer and to get all the authorization that I need from clients. But I would imagine it wouldn't take that long. Thanks. So I see that my time is almost up. Are there any other questions? I guess I just wanted to make certain that the Court realizes that the particular continuance issue with regard to ineffective assistance is not properly before the Court because it wasn't exhausted. The Court does have jurisdiction to examine the ineffective assistance as it relates to whether the counsel properly submitted or properly determined not to submit country conditions or to have the petitioner's two young children testify. And the Court, so that issue is properly before this Court, but petitioners failed to comply with Lozada with regard to that, and therefore their claim would fail on that ground for that purpose. Okay. Thank you. Thank you. You have about three minutes for rebuttal. Thank you. Just a couple of quick points. With respect to ineffective assistance of counsel, the standard in Ortiz is whether the ineffective assistance may have affected the proceedings. And on the record here, clearly the ineffective assistance of counsel may have affected the petitioner's claim. In fact, it clearly did because the judge made his ruling a year later without any consideration of the facts. With respect to exhaustion, as in the opinion in the reply brief, Judge Kaczynski, in one of the cases that you made clear that when an issue is clearly before the Board or a lower court and that issue is at least at the forefront or would be recognized by that Board or panel, it would be bizarre not to address that issue or permit that issue to be heard by the Ninth Circuit. And I think that's clearly what was here. If this was some minor issue or question that was going on at the time, it may not have been on the Board's radar screen. But as the government explained during their portion of oral argument, this was a major issue, the application of the stop-time rule at this time. And finally, Judge Silverman, your question with respect to whether the judge had just simply overridden the objection and said we're going to have the hearing or we're going to continue the hearing irrespective of your objection, that's pretty close to what was the case in Otorola, where a hearing took place, the government, a hearing took place pre-ARRERA, the government filed an appeal, INS filed an appeal simply to take advantage of the later rules or at least in the Ninth Circuit's opinion that was the case, the stop-time provision. And the Ninth Circuit ruled that that is improper because the government, without the agreement or the petitioner did not start the whole process to try to encourage that delay, that it would be improper for the government to delay to work the stop-time provisions against the petitioner. And that would be the case here if the I.J. had made that decision. And that is all I have. I do request that this matter be deferred, that the submission of this matter be deferred. 60 days seems reasonable to me. And nothing further unless there are any questions from the Court. Roberts. You took this case on a pro bono basis. We appreciate your doing that. Thank you. Yes, indeed. I do want to mention something. Do you have a copy of your brief, Mr. Cook? You have a certificate that pursuant to Rule 32. But if you look at, for example, at page 4, you will see that the footnotes do not comply to the typeface requirements. The typeface size? Yes. Okay. Take a look. It's important when signing these things, and I mention it because you are a member of a significant firm in Los Angeles, and I think you are allowed to be aware. But I echo what Mr. Silverman said. We thank you and your firm for taking on the case. You did a very fine job in counsel for the government, an excellent job, and always helps the Court to have experienced and highly competent counsel arguing the case before us. We will defer submission sufficiently, sufficient time for us to consider the motion for 60-day submission. Otherwise, we're done with the case. Thank you very much. Thank you. Thank you. Although we're not quite done with the calendar today. Right. I'm fine. Okay. We will continue without recess to hear the last case on the calendar of Wallace v. United States. Thank you very much. Thank you. Thank you.
judges: Kozinski, Silverman, Weiner